IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1301

Filed: 2 August 2016

McDowell County, No. 12 CvS 787

KAY I. KIMLER, CARY F. KIMLER, LOIS K. ADAMS, LAURA R. NOTTINGHAM, as Trustee of THE NOTTINGHAM JOINT TRUST OF OCTOBER 25, 2005, RONALD E. MACK, JUSTAMONA MACK, JAMES C. DAVIDSON, POLLY P. DAVIDSON, ALMOND E. SHEW, ELISABETH A. SHEW, JAMES C. HORNE, SR., HELEN A. HORNE, LANCE COTTRELL, NORIKA COTTRELL, TOMMY R. PENSON, EDNA S. PENSON, KENNETH F. HODGE, DONNA B. BENTLEY, BARBRA M. BUTLER, MARK S. WILSON, and EUGENIA L. SEXTON, Petitioners,

vs.

THE CROSSINGS AT SUGAR HILL PROPERTY OWNER'S ASSOCIATION, INC., DONALD F. ASKEY, JR., SHELLY C. ASKEY, WILLIAM B. LYNN, JAMES R. FRAMPTON, ELIZABETH A. FRAMPTON, GORDON L. JOHNSON, JANINA F. JOHNSON, HASKELL S. DAWSON, CARNEY N. DAWSON, a/k/a Helen Carney Dawson Living Trust, DENNIS E. BROWN, PATRICIA A. BROWN, BARRY E. HOUGH, ANNE S. HOUGH, THOMAS P. STIVES, NORMA P. STIVES, JANE F. HUMPHREYS, PHILLIP W. TATLER, JR., SALLY L. TATLER, RONNIE MANGUM, MELODY MANGUM, CAROL C. THOMAS, GINA R. DICICCO, WENDY D. RHODES, DAVID W. VERMILYEA, JOYCE A. VERMILYEA, JOSHUA DELL OLIVER, KRISTEN GREEN OLIVER, ANTOINETTE WILLIAMS, PEYTON A. FOSTER, CAROLYN D. FOSTER, DENISE C. AMMONS, RICHARD G. KOHLER, DAVID M. VINTON, ELIZABETH D. VINTON, BLAND WAGERS, JANET W. COUNTS, GEARY B. MILLS, DEBORAH A. MILLS, LARRY K. BRADHAM, KATHY G. BRADHAM, RANDY GREER, RALPH S. TEAL, BETTY W. TEAL, ROBERT R. TYLER, JR., ROBERT KELLEY, LESLIE KELLEY, ALAN C. NEDRICH, SUZETTE R. NEDRICH, LYLE D. MALZAHN, CHRISTINE L. MALZAHN, LAWRENCE M. LOMONACO, STEVEN COPE, OLGA CADILLA-SAYRES, ROLANDO PRIETO-SOLIS, JEANETTE GONZALEZ, WILLIAM L. LITTLE, BARBARA B. LITTLE, FRANK GODZIK, SANDRA GODZIK, CARL D. KICKERT, KATHY P. KICKERT, JOHN G. MASSARO, CRAIG E. METZ, PAMELA A. METZ, FREDDIE M. SETTLEMYRE, ELIZABETH O. SETTLEMYRE, RICHARD E. LEE, CAROL L. LEE, JON A. MAZEY, ELENA V. MAZEY, ERNEST SANTIUSTE, ANTONIA SANTIUSTE and RICHARD M. GETTY, Respondents.

Appeal by Petitioners from orders entered 3 February 2015 and 6 May 2015 by Judge Alan Z. Thornburg in McDowell County Superior Court.  Heard in the Court of Appeals 12 May 2016.

*Johnson Law Firm, P.A., by Gene B. Johnson, for the Petitioners-Appellants.*

*Roberts & Stephens, P.A., by Ann-Patton Hornthal and Phillip T. Jackson, for Respondent-Appellee, The Crossings at Sugar Hill Property Owners' Association, Inc.*

DILLON, Judge.

The Crossings at Sugar Hill ("Sugar Hill") is a residential subdivision in McDowell County.  The Respondent-Appellee is Sugar Hill's homeowners' association ("Sugar Hill HOA").  The Petitioners-Appellants are owners of lots within Sugar Hill.

Sugar Hill was developed in the 1990's by Mountain Creek Land Company, Inc. ("Developer").  Prior to development, the Developer recorded declarations/covenants (the "Declaration"), which provided for the formation of the Sugar Hill HOA and stipulated that certain owners of multiple lots would only be required to pay dues on one lot.  This civil action involves a dispute concerning whether the Sugar Hill HOA acted within its authority when it amended the Declaration in 2012 (the "2012 Amendment").  The Declaration originally provided that any individual purchasing more than one contiguous lot *from the Developer* would only be obligated to pay dues on a single lot so long as the "exempt" lot was not

sold or occupied by a dwelling or camping unit. For the first fifteen years, from 1997-2012, the Sugar Hill HOA, not only billed those purchasing multiple contiguous lots *from the Developer* for one lot, but also only billed multiple lot owners *who did not purchase all their lots from the Developer* for one lot. In 2012, the Sugar Hill HOA began billing the second group on a per-lot basis, and some in that group strongly objected. These objections prompted the Sugar Hill HOA to enact the 2012 Amendment to the Declaration to clarify that it was authorized to bill those who owned multiple contiguous lots *not purchased from the Developer* on a per-lot basis (rather than only for a single lot), as it should have been doing all along. The trial court concluded that the Sugar Hill HOA acted within its authority in enacting the 2012 Amendment. For the following reasons, we affirm.

## I. Factual Background

In 1996, the Developer recorded the Declaration which provided, in part, the following: (1) that any one person/entity purchasing more than one contiguous lot from the Developer be initially required to pay dues on only one lot; (2) that the Developer could modify, change, or amend any provision in the Declaration at any time while the Declaration remained in effect; and (3) that the Declaration would remain in effect until 2021 and would continue beyond 2021, "unless prior [to the 2021 renewal date] an instrument signed by the owners of a majority of lots subject

to this Declaration agreeing to terminate, amend, or modify the Declaration shall have been recorded[.]"

The Declaration provided that the Sugar Hill HOA would be set up with "the power to enforce" the collection of dues and compliance with covenants and restrictions. The Declaration, however, did *not* contain any provision conferring on the Sugar Hill HOA the authority to amend the Declaration. The Declaration further provided that the Sugar Hill HOA would be initially controlled by the Developer until *either* the Developer decided to turn governing power over to the lot owners *or* when 75% of the lots were sold, at which time control of the Sugar Hill HOA would automatically vest in the lot owners.

In February 1997, the Developer signed the Articles of Incorporation for the Sugar Hill HOA. The Articles did *not* contain any provision conferring authority on the Sugar Hill HOA to amend the Declaration.

In September 1997, the Developer recorded a document turning over control of the Sugar Hill HOA to the lot owners. This document, however, did not contain any provision transferring to the Sugar Hill HOA the Developer's authority to amend the Declaration. Shortly after the document was filed, the Sugar Hill HOA held its first meeting. The minutes from the meeting reflect that a statement was made that more burdensome restrictions could not be placed on the property except by agreement of

100% of the lot owners.  However, there was no motion made or vote recorded as to this "statement."

In 1999, the General Assembly enacted the Planned Community Act (the "PCA"), which applies to some planned communities.  The PCA provides in part that, except in certain situations, the declaration of a planned community covered by the PCA could be amended by the vote of 67% of the owners.

In January 2012, with 71% of lot-owner approval, the Sugar Hill HOA passed the 2012 Amendment, which stated that only those owners of contiguous lots *who purchased their contiguous lots directly from the Developer* would be allowed to pay dues on a single lot, while those multiple-lot owners who did not purchase all their contiguous lots from the Developer would be required to pay dues for each lot owned.

## II. Procedural Background

In August 2012, Petitioners-Appellants commenced this action seeking (1) declaratory relief to the effect that *all* individuals owning contiguous lots were exempt from paying dues on more than one lot by virtue of the Declaration, and (2) injunctive relief to enjoin the Sugar Hill HOA from collecting dues on a per-lot basis from owners of contiguous lots not purchased from the Developer.

On 3 February 2015, after a bench trial on the matter, the trial court entered an order which declared, in relevant part, that the statement made at the initial Sugar Hill HOA meeting in 1997 regarding a requirement unanimity to amend the

Declaration was not legally binding; and that the 2012 Amendment (authorizing the Sugar Hill HOA to bill on a per-lot basis those contiguous lots who did not purchase their lots from the Developer) was valid and enforceable. On 6 May 2015, the trial court denied Petitioners-Appellants' motion to amend the first order. Petitioners-Appellants timely appealed from both orders.

## III. Analysis

A. The PCA Authorizes the Sugar Hill HOA To Amend the Declaration

The PCA was enacted in 1999 by our General Assembly. It applies to most "planned communities"[1] created within North Carolina *after* 1999. N.C. Gen. Stat. § 47F-1-102(a) (2015).

Additionally, certain provisions of the PCA apply to planned communities created *prior to* 1999, "unless the articles of incorporation or the declaration expressly provides to the contrary." N.C. Gen. Stat. § 47F-1-102(c) (2015). Two such provisions of the PCA which apply to pre-1999 created planned communities are found in N.C. Gen. Stat. § 47F-2-103 (2015), which deals with the construction and validity of a declaration, and in N.C. Gen. Stat. § 47F-2-117 (2015), which deals with the process of amending a declaration. Based on these two provisions and the language in the

---

[1] "Planned community" is defined by the PCA in N.C. Gen. Stat. § 47F-1-103(23) as real estate whereby a person's ownership of a lot expressly obligates that person by a declaration "to pay real property taxes, insurance premiums, or other expenses to maintain, improve, or benefit other lots or other real estate described in the declaration." Sugar Hill falls within this definition. For instance, the Declaration provides that lot owners are obligated to pay dues for the "maintenance of roads, common areas," etc.

Declaration, we conclude that the Sugar Hill HOA – though formed prior to 1999 – is authorized to amend the Declaration, as otherwise allowed by law, by agreement of lot owners representing 67% of the votes.

N.C. Gen. Stat § 47F-2-103(a) states that "[t]o the extent not inconsistent with the provisions of this Chapter, the declaration, bylaws, and articles of incorporation form the basis for the legal authority for the planned community to act as provided in [those documents], and [those documents] are enforceable by their terms." The interpretation of the Declaration in the present case is one for the courts, and not for a jury, *see Runyon v. Paley*, 331 N.C. 293, 305, 416 S.E.2d 177, 186 (1992), and therefore is reviewable *de novo* on appeal.

Here, the Declaration provides that it may be amended by the Developer. The Declaration does not provide that it may be amended by the Sugar Hill HOA, but only that the Declaration may expire in 2021 by vote of the Sugar Hill HOA.

However, we must read N.C. Gen. Stat. § 47F-2-103 in conjunction with N.C. Gen. Stat. § 47F-2-117, which provides for the process by which a declaration may be amended. Specifically, subsection (a) provides, in pertinent part, as follows:

> Except in cases of amendments that may be executed by a declarant under the terms of the declaration . . . , the declaration may be amended only by affirmative vote or written agreement signed by lot owners of lots to which at least sixty-seven percent (67%) of the votes in the association are allocated, or any larger majority the declaration specifies or by the declarant if necessary for the exercise of any development right.

N.C. Gen. Stat. § 47F-2-117(a) (2015). For those planned communities to which this statutory provision applies, even if not authorized by the declaration, an owners' association may amend the declaration by a sixty-seven percent (67%) vote[2] and a declarant may amend the declaration if necessary to exercise a development right.[3] This grant of authority to an owners' association to amend the declaration applies to the Sugar Hill HOA in the present case, though the HOA was formed prior to 1999, because there is nothing in the Declaration or articles of incorporation which "*expressly* provides to the contrary." N.C. Gen. Stat. § 47F-1-102(c) (2015) (emphasis added) (providing for the application of N.C. Gen. Stat. § 47F-2-117 to pre-1999 formed planned communities). Specifically, there is nothing in the Declaration which *expressly* states that the Sugar Hill HOA is not authorized to amend the Declaration.[4]

---

[2] We note that N.C. Gen. Stat § 47F-2-117(a) provides that the declaration may provide that a larger supermajority than 67% be required to amend. Here, however, the Declaration does not contain any provision which even addresses the Sugar Hill HOA's authority to amend the Declaration. There is evidence that a statement was made at the Sugar Hill HOA's 1997 initial meeting that a 100% vote would be required. However, this statement is not part of the Declaration, and we affirm the trial court's conclusion that this "statement" is unenforceable.

[3] Under N.C. Gen. Stat. § 47F-2-117, a developer's authority to amend the declaration is limited to those amendments deemed necessary for the exercise of any development right unless the declaration itself authorizes the developer to amend the declaration affecting other matters.

[4] We note that even if the declaration of a planned community formed prior to 1999, expressly prohibits the owners' association from amending the declaration, the PCA allows the owners' association to amend the declaration to make all of the provisions of the PCA applicable to its planned community by affirmative vote of 67%. This rules applies even if the declaration prohibits the association from making any amendments to the declaration. N.C. Gen. Stat. § 47F-1-102(d). Therefore, where a declaration in a planned community formed prior to 1999 expressly prohibits its owners' association from amending the declaration, the association may still vote to amend the declaration to adopt the provisions of the PCA. *Id.* And once the provisions of the PCA are so adopted, the association may then amend the declaration in other ways pursuant to its authority under N.C. Gen. Stat. § 47F-2-117.

Therefore, in conclusion, N.C. Gen. Stat. § 47F-2-117 applies to pre-1999 formed planned communities where (1) *either* the terms of the declaration or articles of incorporation do not expressly provide to the contrary pursuant to N.C. Gen. Stat. § 47F-1-102(c), *or* (2) the association has adopted the terms of the PCA pursuant to N.C. Gen. Stat. § 47F-1-102(d). Here, although the Sugar Hill HOA has not adopted the PCA pursuant to N.C. Gen. Stat. § 47F-1-102(d), there is nothing in the Declaration or the Articles of Incorporation which expressly prohibit the application of N.C. Gen. Stat. § 47F-2-117. Accordingly, the Sugar Hill HOA is authorized to amend the Declaration by a vote of at least 67%.

## B. The 2012 Amendment Is Valid

Sugar Hill HOA's authority to amend the Declaration is not unlimited. Rather, our Supreme Court has held that an owners' association's authority to amend a declaration is limited to those amendments which are "reasonable[.]" *Armstrong v. Ledges Homeowners Ass'n*, 360 N.C. 547, 548, 633 S.E.2d 78, 81 (2006). "Reasonableness may be ascertained from the language of the declaration, deeds, and plats, together with the other objective circumstances surrounding the parties' bargain, including the nature and character of the community." *Id.*

Here, the Sugar Hill HOA enacted an amendment by 71% vote that amended paragraph 8(c) of the Declaration, which dealt with the assessment of dues when one owns multiple contiguous lots. The original provision stated as follows:

> Any one person(s), or entity purchasing and owning two (2) or more contiguous lots in [Sugar Hill] (whether in a single deed, or in separate deeds, and whether such purchases are simultaneous or otherwise) will be required to pay Association dues on only one lot per year, as provided in this Declaration; provided, however, that the deed from the [Developer] shall designate which lot or lots in excess of one are the exempt lot or lots, and such exempt lot or lots will maintain an exempt status unless or until (a) the lot is sold, or (b) a living or camping unit is placed upon it, and in the event of either (a) or (b) above the exemption will be lost forever.

As stated above, it is the duty of the courts to construe the terms of the Declaration. *See Runyon*, 331 N.C. at 305, 416 S.E.2d at 186. Our Supreme Court has further instructed that we are to construe the declaration based on the intent of the parties. *Id.* We conclude that paragraph 8(c) was intended to provide that anyone buying contiguous lots *from the Developer* would only be initially obligated to pay dues based on one of the lots and that the other lots would be exempt until sold or occupied by a living or camping unit. We also conclude that it was not intended that the exemption be lost simply because the Developer failed to state in the conveyance which lots were to be exempt, but that in such case the lot on which the buyer initially built would be the lot to be assessed.

In practice, in most instances where a buyer purchased more than one contiguous lot from the Developer, the Developer failed to designate which lot(s) would initially be exempt from dues. Further, the evidence shows and the trial court found that for the first fifteen years (until 2012), the Sugar Hill HOA billed *all* owners

of contiguous lots for only a single lot, even those who did not acquire their lots directly from the Developer. Beginning in 2012, the Sugar Hill HOA began collecting dues on a per-lot basis from those multi-lot owners whose contiguous lots were *not* conveyed to them by the Developer. Several such owners refused to comply, which prompted the Sugar Hill HOA to amend paragraph 8(c) to provide as follows:

> Any one person(s) or entity purchasing two or more contiguous lots originally conveyed from [the Developer] (whether in a single deed, or separate deeds, and whether such purchases are simultaneous or otherwise) will be required to pay Association dues on only one lot per year as provided for in this Declaration and such exempt lot or lots will remain exempt unless and until (a) the lot is sold, or (b) a living or camping unit is placed upon it, and in the event of either (a) or (b) the above exemption will be lost permanently.

> All contiguous lots that were not conveyed by [the Developer] shall not be designated as exempt from association dues henceforth.

We conclude that the intent of the 2012 Amendment was largely to clarify paragraph 8(c) as originally written, but without the requirement that the deed from the Developer recite *which lot(s)* would be exempt. We do not believe that the change is unreasonable based on our Supreme Court's decision in *Armstrong*. Accordingly, the 2012 Amendment is valid and enforceable.

We do not believe that the Sugar Hill HOA is barred by estoppel or laches from enacting the 2012 Amendment to collect dues on a per-lot basis from owners of multiple contiguous lots that were not conveyed by the Developer. It is of no

- 11 -

consequence that the Sugar Hill HOA did not collect dues from these owners on a per-lot basis prior to the passage of the 2012 Amendment. The Sugar Hill HOA is not currently collecting dues in accordance with the original 1997 provision that it failed to enforce, but rather in accordance with the more recent 2012 Amendment, which we have held the Sugar Hill HOA was empowered to enact.

## IV. Conclusion

We affirm the trial court's conclusion that the statement recorded in the minutes of the 1997 Sugar Hill HOA meeting, requiring a 100% vote to amend the Declaration, is unenforceable. We affirm the trial court's conclusion that the provisions of N.C. Gen. Stat. § 47F-2-117 apply to the Sugar Hill HOA, empowering the Sugar Hill HOA to amend the Declaration by a 67% vote. And we affirm the trial court's conclusion that the 2012 Amendment is valid and enforceable.

AFFIRMED.

Judges DAVIS and ZACHARY concur.